Good morning, Your Honors. May it please the Court, Vivian Field on behalf of Petitioner Appellant Larry Bishop, I would like to reserve two minutes for rebuttal and I will watch the clock. This claim arises from the denial of Mr. Bishop's federal habeas petition under AEDPA. This case is unusual on two points. First, juror number five admitted to intentionally hiding her employment in the LAPD gang and narcotics unit because she wanted to serve as a juror and because she believed correctly that she would be excused if she disclosed that information. And second, despite this extraordinary admission which led the California Court of Appeal to assume misconduct and a presumption of prejudice, no evidentiary hearing was ever held and no juror, not even juror number five, was ever questioned after her actions came to light. Counsel, one thing I've been trying to figure out, I mean, it seems clear to me reading the Supreme Court case law that there's a hearing requirement at some point along this way, but I'm trying to figure out exactly at what point in the analysis the hearing requirement is triggered. What is your view on that? Once the trial court was alerted of the intentional hiding of her employment, you know, with the admitted motive of wanting to serve as a juror in this gang crimes case and that she informed the rest of the jury about where she worked, coupled with her statements to the other jurors, once all of that was known, the trial court had a duty to investigate. So if I break it down based on the language in the cases, sort of step one is do we have juror conduct that could possibly be prejudicial? And then if the answer is yes, your position is automatic hearing? No, no. Well, well, we recognize that a hearing is not required every time there's a claim of juror bias, but definitely once the defendant has raised a color book claim, the trial court has a duty to undertake it, you know. What's the difference between possibly prejudicial and a colorable claim? Well, I think in this case the claim is pretty strong. I mean, the fact that it's a, I think possibility leaves room for, maybe it doesn't arise to the level where a hearing might be required, but I think in this case where the state court actually found misconduct and a presumption of prejudice, I don't think there's any argument. The state court didn't find misconduct, it assumed misconduct. It assumed, but the analysis is based on its assumption. And it followed that assumption by deciding wasn't going to matter because there wasn't any prejudice. What would an evidentiary hearing have accomplished? Well, I think an evidentiary hearing, there's nothing in the record with respect to even the scope of her job, you know, what she did there, how closely she worked with gang officers, you know. I mean, the state focuses on the fact that, you know, she's a clerk, but she could be doing, you know, she could be transcribing, you know, interviews with gang members. I mean, she could be socially, socializing with the officers, talking about their cases. There's no information on that. And I think without that kind of factual development, it was unreasonable to not hold a hearing and to reject the claim. So it's pretty clear that the Court held some kind of a hearing. The Court did hold a hearing on Mark. Your contention is that it was not an adequate form of hearing.  Okay. What — because this is AEDPA, and we have to look for clearly established law, as established by the Supreme Court, not by this Court, what case would tell us that the Court was obligated to hold a different kind of hearing than the one that it held? Well, I would rely on Smith, Smith v. Phillips, and the Bremer cases, Williams v. Taylor, McDonough. But I think, for instance, in Williams v. Taylor, there was a juror who didn't reveal during voir dire that she was related to one of the witnesses because it was her ex-husband and they were divorced. And so her excuse was, well, we weren't related. But the Court still — the Supreme Court remanded for an evidentiary hearing because it found that, you know, her — at a hearing, the petitioner could have shown bias and more further factual development was needed. Was there some kind of a hearing held in Williams? It was remanded. Okay. Well, but did they — we have a hearing here. You're asking us to send this back because it was an inadequate hearing. Does Williams tell us what kind of a hearing we have to have or simply that we must have some kind of a hearing? Yes, I see your point, Your Honor. I think it's basically — Smith v. Phillips states that, you know, there's some sort of — some factual development has to be had. Our position is that in this case, the factual development — there was no factual development, basically, because — So there was no — there was a hearing on the motion for a new trial. There was a hearing on the motion for a new trial. No evidence presented. No evidence was presented. No jurors testified. And I think without that, the petitioner, Mr. Bishop, did not have the opportunity to show bias because there's no way — without some kind of factual development, there's no way that he could show that, you know, for instance, she socialized with, you know, fellow officers. She knew about the cases. You know, she said in her questionnaire that she had no friends in law enforcement and she'd worked two separate jobs for the LAPD. All of those things, you know, should have been explored. And I think most importantly, she gave this excuse of, well, I just wanted to be on the juror and that's — on the jury, and that's why I didn't reveal this. But that has to be tested. I mean, that is not — you know, that was — she was never questioned about that. I mean, if that were the case, anyone who lied about — you know, could say, oh, well, I just wanted to be on the jury, and that's why I lied. And if that was enough, that — I don't think that's constitutionally, you know, adequate under — under Smith, under Remmer, under Williams v. Taylor, under McDonough. Yeah, I mean, the problem from our perspective — and unfortunately, it's your problem as well — is that some kind of a hearing was held. If it's an inadequate hearing — I mean, we can't even go to something like, you know, Matthews v. Eldridge to say, this is the kind of hearing that should have been held. That would be direct review. But on AEDPA, we've got to be able to point to something in the Supreme Court that would say, gee, had the California Court of Appeals read this case or read the case more carefully, they would have understood why this case had to go back. And that's the case that I'm asking for. Yeah. I think — I would have to go back to also this — how I understood that Supreme Court cases are what everyone is looking at, but how this Court has interpreted Supreme Court cases with respect to — Well, that's relevant. I'll take a decision of our court saying this is what the Supreme Court has held. Well, Hedlund v. Ryan has said that basically once a defendant has raised a colorable claim of bias, the trial court has a duty to undertake an investigation of relevant facts and circumstances. Dyer v. Calderon has made similar — Were those AEDPA cases? Dyer was not. Hedlund, I believe, was. U.S. Angulo, which also is not AEDPA, but has made similar statements. I guess — I mean, why doesn't Smith say this? This is the statement from Smith. This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias. The opportunity to prove something means — like, how are you going to do that without evidence? That's how I'm talking about it. Which is why my question is, at what point along the test does the hearing obligation get triggered? Okay. Well, I think that — I guess I could argue that the trial court in talking about the hearing basically characterized it as a preliminary hearing. So it said — and this is in the transcripts — it said, okay, we are all agreed we're going to have this hearing on March 17th, but it's a preliminary hearing to decide whether we're going to have a hearing. So it wasn't really a hearing, I guess would be one argument. And it was a preliminary hearing about whether to have a hearing — about whether to have a hearing with the jurors. All right. Do you want to save some time for rebuttal? Yes, I do. Thank you. May it please the Court, Jonathan Klein, Deputy Attorney General, for Respondent. At the outset, Respondent does not condone Juror No. 5's deliberate omission of information that she knew the parties would find relevant. But the issue in this case is whether Juror No. 5 was biased. And on that score, the California Court of Appeal reasonably determined that she was not. It appears that counsel has not argued actual bias. She's only argued that the fact-finding process used by the state was deficient. So I will go directly to that. Can I ask you a question at the outset? It seems like one of our most recent and clear cases in terms of how we do this analysis is our Ong decision and Godoy. Do you agree that that applies? No, Your Honor, I don't. Godoy was a case that involved third-party contact with a juror. And that goes along the lines of Remmer. And Remmer and another United States Supreme Court case, Maddox, did establish clear federal law that a hearing is required in those situations where there is contact with a juror. So you're going to just draw a distinction between maybe what we would call evidence tampering or juror tampering versus, I guess it's juror tampering versus juror bias. Yes, Your Honor. What in the Supreme Court case law, other than the fact that they address different fact patterns, tells us that there's a distinction between those two things? Well, there is authority saying that. And let me see if I can find it. You know, this court has said in Tracy v. Palmatier, 341 F. 3rd, 110 37, Remmer's, this is a quote, Remmer's command that hearings are warranted in every case is unique to the tampering context where the potential effect on the jury is severe. So I think that's pretty clear. This court has already held that tampering context is unique. And that's not what we have here. I guess I don't know what to make of that when the Supreme Court has also said that juror bias is basically a structural error. It's a fundamental violation of the Constitution if even one juror is biased. So why would we hold a lesser standard in that context? Well, the issue is whether the juror was actually biased and specifically whether the California state court's process for resolving that claim was adequate. And I believe to answer your earlier question, the... I guess I'm not understanding. So you were saying, you know, you have a more robust hearing requirement for juror tampering context than for juror bias context.  And I don't understand the answer that you just gave when I'm saying, why would that be true when we take so seriously the possibility of one juror being biased? Well, Your Honor, because jury tampering has been considered more severe. And in lesser cases, I believe the applicable standard was what was set forth by this court in Hibler v. Benedetti, where it said a state court's decision to not hold an evidentiary hearing does not render its fact-finding process unreasonable so long as the state court could have reasonably concluded that the evidence already adduced was sufficient to resolve the factual question. And so the issue here is what the state court did sufficient to resolve the factual question. And I would say the answer to that is yes. Before it, the court had Juror No. 5's declaration, in which she gave a case-neutral reason for omitting the information. And it was an understandable one, that she'd always wanted to serve as a juror, and she felt reasonably that if she revealed the information, she would be dismissed. But more importantly than that, we have her actions here. She showed that she evaluated the prosecution's evidence conscientiously and skeptically. Darcy B. was a critical prosecution witness. She was the one that identified Bishop as the driver of the car from which the shots were fired. But Juror No. 5 openly questioned Darcy B.'s credibility and urged other jurors to reject her testimony, arguing that she could not have seen what she said she saw. And then she voted to acquit Bishop on three counts. And she found the gang special circumstance allegation not true to him, not true as to him. So such actions are entirely inconsistent with a juror who is actually biased against the defendants. I would also point out that at the time of the new trial hearing, there really wasn't much of a dispute as to the facts. An evidentiary hearing is used to resolve factual disputes, but there really was only one statement that was disputed. And for purposes of resolving the juror bias question, the court found that to be true, that Juror No. 5 had said that. There really wasn't a whole lot of purpose for a full-blown evidentiary hearing. And I would further add that there was the state court finding by the trial judge that Juror No. 5 was credible when she said she could be fair, a finding that the appellate court was required to defer to under California law. And counsel has cited a few cases that I think are inapplicable. One is Williams v. Taylor. In that case, the claim did not even come up in state court. Yeah, the petitioner did not even bring up the juror bias claim in state court. So the issue that the court was deciding was whether an evidentiary hearing was mandated under 2254E2, which is not relevant and not before this court at all, since we are operating under 2254D. And also, the Dyer case was mentioned, and it was acknowledged that that was a pre-AEDPA case. And furthermore, the holding in that case was for implied bias, but there is no clearly established federal law regarding the issue of implied bias. The Supreme Court has never explicitly adopted or rejected the doctrine of implied bias. That's what this court has said. So Dyer is also unhelpful. So for these reasons, Your Honor, we are asking that the district court's judgment be affirmed. Unless the court has any questions, I'm prepared to submit. Thank you. Thank you. I just want to address quickly with respect to what opposing counsel said about Darcy B. That was an additional instance of misconduct that juror number five did. So I don't think it's reasonable to pick additional misconduct that you did. The juror clearly did not respect the trial court's instructions and just did whatever she felt like. And with respect to the credibility determination, that was made during voir dire, or it was a statement that was made during voir dire before any of this misconduct came to light. So that was an unreasonable determination of the facts, to the extent that the appellate court was relying on that as a credibility determination. If that were the case, there would never be a need for an evidentiary hearing because at voir dire, everyone answers the question. Yes, I can be impartial. I just want to also bring up this. There's one unpublished case, Guards of E. Tilton, 223 Federal Appendix 688, where that's on federal habeas where this court found that the California court bore responsibility for underdevelopment of the record regarding a who might have been dishonest on voir dire and remanded to the district court for an evidentiary hearing. And after that hearing, the district court found that the juror lied and granted relief based on implied bias. And I think I'm over. Thank you. All right. I thank counsel for the helpful argument. The matter, I got to look here, of Bishop v. Robertson is submitted.
judges: CLIFTON, BYBEE, FORREST